UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL JOSEPH ZITA<br><br>Plaintiff<br><br>v.<br><br>NEW PENN FINANCIAL, LLC, a Delaware Limited Liability Company DBA SHELLPOINT MORTGAGE SERVICING<br><br>Defendant. | CASE NUMBER 1:16-cv-02690<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES the Plaintiff, MICHAEL JOSEPH ZITA ("Plaintiff") by and through his attorneys, SULAIMAN LAW GROUP, LTD., complaining of the Defendant, NEW PENN FINANCIAL, LLC DBA SHELLPOINT MORTGAGE SERVICING ("Shellpoint") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking actual damages, statutory damages, punitive damages, attorney fees, and costs for Shellpoint's violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692, violation of the Bankruptcy Automatic Stay pursuant to 11 U.S.C. §362(k)(1) and violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to 815 ILCS 505/1 et seq.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

1

3. The Court has supplemental jurisdiction over the state law ICFA claim under 28 U.S.C. §1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Shellpoint's conduct harmed Plaintiff in this District.

**PARTIES**

5. Plaintiff, Michael Joseph Zita, is a consumer and natural person over 18 years of age who at all times relevant owned and resided at the property located at 181 Herrick Road, Riverside, Illinois 60546 ("subject property").

6. Defendant, Shellpoint is a limited liability company with its principal place of business in Plymouth Meeting, Pennsylvania. Shellpoint's primary business is servicing loans in the state of Illinois and across the county.

**BANKRUPTCY CASE**

7. On February 18, 2008, Plaintiff executed a mortgage and note in the amount of $138,500.00 ("subject debt" or "subject loan") in favor of Capital Financial Bancorp, Inc. ("Capital") secured by the subject property.

8. Capital transferred the subject debt to AmTrust Bank.

9. Thereafter, AmTrust Bank transfered the subject debt to JPMorgan Chase Bank, N.A.

10. In 2011, Plaintiff defaulted on the subject debt.

11. The subject loan was not in default when AmTrust Bank transferred or sold the subject loan to JPMorgan Chase Bank, N.A.

12. On June 19, 2015, Plaintiff filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 15-21351 ("bankruptcy").

13. Schedule D of the bankruptcy petition listed the subject loan, a secured pre-petition debt to JPMorgan Chase Bank, N.A., secured by the subject property. *See* Exhibit A, a true and correct copy of Schedule D filed in Plaintiff's bankruptcy case.

14. On June 24, 2015, because JPMorgan Chase Bank, N.A. was listed as a creditor, the Bankruptcy Noticing Center ("BNC") served JPMorgan Chase Bank, N.A. with notice of Plaintiff's bankruptcy filing. *See* Exhibit B, a true and correct copy of the BNC Certificate of Notice establishing service of the notice of filing on JPMorgan Chase Bank, N.A.

15. The Plaintiff filed a Chapter 13 Plan, which was served upon JPMorgan Chase Bank, N.A. by the Bankruptcy Noticing Center on June 24, 2015. *See* Exhibit C, a true and correct copy of the June 19, 2015, Chapter 13 Plan and Proof of Mailing on June 24, 2015, by the Bankruptcy Noticing Center.

16. The June 19, 2015, Chapter 13 Plan proposed to pay $3,500.00 per month to the Chapter 13 Trustee for sixty months with monthly mortgage payments to JPMorgan Chase Bank, N.A. in the amount of $2,300.00 and arrears for subject real estate in the amount of $67,000.00 being paid via the Chapter 13 Trustee to JPMorgan Chase Bank, N.A. *Id.*

17. On June 26, 2015, JPMorgan Chase Bank, N.A., through its counsel, Maria Georgopoulos filed an Appearance in Plaintiff's bankruptcy case. *See* Exhibit D, a true and correct copy of the Entry of Appearance.

18. On July 27, 2015, the 341 Meeting of Creditors was held with the Chapter 13 Trustee. No representative or attorney from JPMorgan Chase Bank, N.A. appeared at the 341 Meeting of Creditors.

19. On August 7, 2015, JPMorgan Chase Bank, N.A., through its counsel, Joel P. Fonferko file an Agreed Substitution of Attorney for Maria Georgopoulos in Plaintiff's bankruptcy case. *See* Exhibit E, a true and correct copy of the Agreed Substitution of Attorney.

20. The Plaintiff filed a Modified Chapter 13 Plan dated August 23, 2015, which was served upon JPMorgan Chase Bank, N.A. by the Bankruptcy Noticing Center on August 26, 2015. *See* Exhibit F, a true and correct copy of the August 23, 2015, Modified Chapter 13 Plan and Proof of Mailing on August 26, 2015, by the Bankruptcy Noticing Center.

21. The August 23, 2015, Modified Chapter 13 Plan proposed to pay $3,500.00 per month for twelve months with stepped up payments each twelve months to the Chapter 13 Trustee for sixty months with monthly mortgage payments to JPMorgan Chase Bank, N.A. in the amount of $2,505.93 and arrears for subject real estate in the amount of $67,000.00 being paid via the Chapter 13 Trustee to JPMorgan Chase Bank, N.A. *Id.*

22. On October 13, 2015, JPMorgan Chase Bank, N.A. filed a Proof of Claim regarding subject debt for the subject property in the total amount of $236,518.73 with arrears of $116,509.38. *See* Exhibit G, a true and correct copy of the Proof of Claim filed by JPMorgan Chase Bank, N.A. on October 13, 2015.

23. The Plaintiff filed a Modified Chapter 13 Plan dated December 14, 2015, which was served upon JPMorgan Chase Bank, N.A. by the Bankruptcy Noticing Center on December 17, 2015. *See* Exhibit H, a true and correct copy of the December 14, 2015, Modified Chapter 13 Plan and Proof of Mailing on December 19, 2015, by the Bankruptcy Noticing Center.

24. The December 14, 2015, Modified Chapter 13 Plan proposed to pay $3,500.00 per month for twelve months with stepped up payments each twelve months to the Chapter 13 Trustee for sixty months with monthly mortgage payments to JPMorgan Chase Bank, N.A. in the amount of

$2,505.93 and arrears for subject real estate in the amount of $67,000.00 being paid via the Chapter 13 Trustee to JPMorgan Chase Bank, N.A. with the balance of the claimed arrears to not be dischargeable. *Id.*

25. The Plaintiff filed a Modified Chapter 13 Plan dated December 15, 2015, which was served upon JPMorgan Chase Bank, N.A. by the Bankruptcy Noticing Center on December 20, 2015. *See* Exhibit I, a true and correct copy of the December 15, 2015, Modified Chapter 13 Plan and Proof of Mailing on December 20, 2015, by the Bankruptcy Noticing Center.

26. The December 15, 2015, Modified Chapter 13 Plan proposed to pay $3,500.00 per month for twelve months with an increase in payments every twelve months to the Chapter 13 Trustee for sixty months with monthly mortgage payments to JPMorgan Chase Bank, N.A. in the amount of $2,505.93 and arrears for subject real estate in the amount of $67,000.00 being paid via the Chapter 13 Trustee to JPMorgan Chase Bank, N.A. with the balance of the claimed arrears to not be dischargeable. *Id.*

27. On December 23, 2015, MTCLQ Investors LP sent to the Plaintiff a Notice of Transfer of Your Mortgage Loan from to MTCLQ Investors LP effective December 17, 2015. *See* Exhibit J, a true and correct copy of the December 23, 2015 Notice of Transfer of Your Mortgage Loan from to MTCLQ Investors LP.

28. On January 5, 2016, Judge Carol A. Doyle confirmed the Modified Chapter 13 Plan dated December 15, 2015 (Bankruptcy Docket 37). *See* Exhibit K, a true and correct copy of the Order Confirming Plan.

29. On information and belief prior to February 4, 2016. JPMorgan Chase Bank, N.A. transferred the servicing rights to New Penn Financial, LLC dba Shellpoint Mortgage Servicing.

30. On February 4, 2016, Shellpoint sent the Plaintiff a Statement which listed a Regular Monthly Payment of $840.06, a Past Due Amount of $36,062.94, demanding that $36,062.94 be paid by March 1, 2016. *See* Exhibit L, a true and correct copy of the December 17, 2015 Statement for the subject property.

31. Pursuant to 11 U.S.C. §362, the filing of the Bankruptcy Case invoked the protections of the automatic stay prohibiting any acts to collect upon the subject debt by Shellpoint or any other party or defendant.

32. At no time has Shellpoint or JPMorgan Chase Bank, N.A. moved for relief from the automatic stay.

33. While the Bankruptcy was pending the automatic stay was in full force and effect. However, Shellpoint sought to collect the subject debt from Plaintiff.

34. All of Shellpoint's collection efforts occurred with actual knowledge of Plaintiff's bankruptcy filing.

35. Concerned about the violations of his rights and protections afforded by virtue of filing his Chapter 13 case, Plaintiff sought the assistance of counsel to ensure Shellpoint's collection efforts ceased.

36. Plaintiff has expended time and incurred costs consulting with their attorneys as a result of Shellpoint's deceptive collection actions.

37. Plaintiff was unduly inconvenienced and harassed by Shellpoint's unlawful attempts to collect the subject debt.

38. Plaintiff suffered from emotional distress due to Shellpoint's unlawful attempts to collect the subject debt as he and his spouse were led to believe their bankruptcy had no legal effect.

39. Shellpoint's collection efforts were highly confusing and upsetting to Plaintiff as he was led to believe that his bankruptcy had no legal effect and that he was still obligated on the subject debt; which was the driving force in his decision to seek bankruptcy protection.

## COUNT I – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

40. Plaintiff restates and realleges paragraphs 1 through 39 as though fully set forth herein.

41. The Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

42. The subject debt is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction for personal, family, or household purposes.

43. Shellpoint qualifies as a "debt collector" as defined by §1692a(6) because Shellpoint regularly collect debts and uses the mail and/or the telephone to collect delinquent consumer accounts.

44. Shellpoint also qualifies as a "debt collector" because Shellpoint acquired rights to the subject debt after it was in default. 15 U.S.C. §1692a(6).

45. Bankruptcy Code Section 362(a)(6), commonly known as the automatic stay provision, prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. §362(a)(6).

46. Shellpoint violated 15 U.S.C. §§1692 c(a)(2), e(2), e(10), f, and f(1), through its debt collection efforts.

    a. **Violations of FDCPA § 1692c**

47. Shellpoint violated §1692c(a)(2), by sending the Mortgage Statement (Exhibit L) directly to Plaintiff when Shellpoint knew that Plaintiff was represented by counsel. The identity and contact information of Plaintiff's counsel was expressly indicated in the Notice of Chapter 13, which is a matter of public record, and was served upon JPMorgan Chase Bank, N.A. during the

Plaintiff's bankruptcy filings. Shellpoint had knowledge of the Chapter 13 Bankruptcy case as a result of transfer from JPMorgan Chase Bank, N.A. which had knowledge and by being an assignee of JPMorgan Chase Bank, N.A.

    **b. Violations of FDCPA § 1692e**

48. Shellpoint violated §1692e(2) when Shellpoint misrepresented the character, amount, or legal status of the subject debt. The subject debt was not collectible at the time Shellpoint demanded payment of the subject debt because of the automatic stay via the Mortgage Statement (Exhibit L).

49. Shellpoint violated §1692e(10) when Shellpoint engaged in deceptive conduct and falsely represented that the subject debt was collectible at the time of the demands as the subject debt was not collectible by virtue of the bankruptcy automatic stay.

    **c. Violations of FDCPA § 1692f**

50. Shellpoint violated §1692f(1) by attempting to collect a debt not permitted by law as the automatic stay prohibits collection of the subject debt.

51. Shellpoint attempted to dragoon and induce the Plaintiffs into paying a debt that was not legally owed via sending the Mortgage Statement (Exhibit L).

52. As an experienced creditors and debt collector, Shellpoint knew or should have known the ramifications of collecting on a debt that was protected by the automatic stay.

53. Shellpoint knew or should have known that the subject debt was uncollectable as a matter of law.

54. Upon information and belief, Shellpoint has no system in place to identify and cease collection of debts protected by the bankruptcy automatic stay.

    WHEREFORE, Plaintiff, Michael Joseph Zita requests that this Honorable Court:

   a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
   b. Award the Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;
   c. Award the Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1692k; and
   d. Award any other relief as this Honorable Court deems just and appropriate.

## COUNT II- VIOLATION OF THE AUTOMATIC STAY

55. Plaintiff restates and realleges paragraphs 1 through 39 as though fully set forth herein.

   a. Section 11 U.S.C. §362(a)(6)

56. The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 367, 127 S.Ct. 1105, 1107, 166 L.Ed.2d 956 (2007).

57. Section 362(a)(6), commonly known as the automatic stay provision, prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. §362(a)(6).

58. "The automatic stay invoked by the filing of a bankruptcy petition protects a debtor from creditors' attempts to collect pre-petition debts. The automatic stay is designed to give Debtor breathing space so that they may reorder their affairs." *In re Robinson*, 228 B.R. 75, 80. (Bankr.E.D.N.Y.1998).

59. "As one of the fundamental debtor protections provided by bankruptcy laws, the automatic stay is intended to stop virtually all debt collection efforts, including efforts to take possession of collateral." *In re Bishop*, 296 B.R. 890, 894 (Bankr.S.D.Ga.2003).

### b. Shellpoint's violations of the Automatic Stay

60. Despite having actual notice of Plaintiff's bankruptcy, Shellpoint sent a Mortgage Statement (Exhibit L) for the subject debt and subject property.

61. The sending of a Mortgage Statement (Exhibit L) for the subject property by Shellpoint was direct violation of the bankruptcy automatic stay.

### c. Shellpoint's conduct was perpetual, willful, and wanton

62. Shellpoint as an assignee of JPMorgan Chase Bank, N.A. had knowledge of Plaintiff's bankruptcy through multiple notices from the BNC, the public record, and from Plaintiff directly. *See* Exhibits.

63. Despite having actual knowledge of Plaintiff's Bankruptcy, Shellpoint committed an egregious violation of the automatic stay by sending a Mortgage Statement (Exhibit L). This action is especially egregious as the sending a Mortgage Statement after participating in the Chapter 13 Confirmation process shows a lack of respect for the law and specifically the Bankruptcy Code by the Shellpoint.

64. The sending of a Mortgage Statement (Exhibit L) warrants sanctions and punitive damages to deter future conduct of a similar nature.

65. Plaintiff is entitled to actual damages, attorney's fees, and costs for Shellpoint's willful violations of the automatic stay injunction. Plaintiff is also entitled to punitive damages for Shellpoint's arrogant defiance of the Bankruptcy Code and its provisions. The Court should award punitive damages to deter Shellpoint from future misconduct.

WHEREFORE, Plaintiff Michael Joseph Zita request that this Honorable Court:

    a. Enter an order directing Shellpoint to pay a sum determined by the Court to Plaintiff for actual damages for violations of 11 U.S.C. §362(k)(1);

  b. That this Honorable Court enter an order directing Shellpoint to pay a sum determined by the Court to Plaintiff for punitive damages for violations of 11 U.S.C. § 362(k)(1);

  c. That this Honorable Court enter an order directing Shellpoint to pay a sum determined by the Court to Plaintiff for all reasonable legal fees and expenses incurred by his attorneys for violations of 11 U.S.C. §362(k)(1); and

  d. That Plaintiff be provided such other and further relief as the Court may deem just and proper.

### COUNT III – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT

66. Plaintiff restates and reallages paragraphs 1 through 32 as through fully set forth herein.

67. Plaintiff is a "person" and "consumer" as defined in ICFA, 815 ILCS 505/ (c) and (e) respectively.

**a. Unfairness**

68. Shellpoint is engaged in commerce in the State of Illinois with regard to Plaintiff, the subject debt, and the subject property. Shellpoint speciales in lending, servicing, and/or debt collection, which are activities within the stream of commerce and utilized in their regular course of business. *See* 815 ILCS 505/1(f).

69. Shellpoint's demand for payment on the subject debt sending a Mortgage Statement, which was duly scheduled in Plaintiff's bankruptcy, represents the use of false pretenses and misleading communication to attempt to collect a debt that was not owed at the time the demand for payment were made.

70. It was unfair for Shellpoint to mislead Plaintiff into believing the subject debt was collectible via sending a Mortgage Statement, when it was not.

71. It was unfair for Shellpoint to seek to collect the subject debt from the Plaintiff through sending a Mortgage Statement (Exhibit L).

72. It was unfair for Shellpoint to attempt to induce the Plaintiff into making payments on an currently uncollectible debt via sending a Mortgage Statement.

73. Shellpoint intended that the Plaintiff rely on its unfair acts.

### b. Deception

74. Shellpoint's demands for payment represent the use of deception, fraud, and false pretense in an attempt to collect a debt because it was not owed at the time the demands for payment were made. *See* 815 ILCS 505/2.

75. Shellpoint's demands were deceptive because they were systematically calculated to mislead Plaintiff into believing the subject debt was owed, when in fact the subject debt was protected by Plaintiff's bankruptcy.

76. Shellpoint's demands for payment were systematically calculated to induce payment on a debt that was not collectible.

77. Such deceptive conduct is harmful to Illinois consumers as it can result in Illinois consumers paying debts that are not owed.

78. As pled above, Plaintiff has suffered damages as a result of Shellpoint's unlawful collection practices.

79. An award of punitive damages is appropriate because Shellpoint's conduct described above was outrageous, willful and wanton, showed a reckless disregard for the rights of the Plaintiff and consumers, generally, and the Plaintiff would be let to the fact that he had no choice but to pay the Mortgage Statement (Exhibit L).

WHEREFORE, Plaintiff, Michael Joseph Zita, requests that this Honorable Court:

a. Enter judgment in Plaintiff favor and against Shellpoint;
b. Award Plaintiff actual damages in an amount to be determined at trial;
c. Award Plaintiff punitive damages in an amount to be determined at trial;
d. Award Plaintiff reasonable attorney's fees and costs pursuant to 815 ILCS 505/10a(c); and
e. Award any other relief this Honorable Court deems equitable and just.

**Plaintiff demands a trial by jury.**

**Dated:** February 29, 2016　　　　　　　**Respectfully Submitted,**

**/s/ Paul M. Bach**

Paul M. Bach, Esq. ARDC#6209530
*Counsel for Plaintiffs*
Sulaiman Law Group, Ltd.
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone: (630) 575-8181
Fax: (630) 575-8188